Morning, ladies and gentlemen. Our first case for argument, United States v. McLeod. Mr. Henderson. Good morning, Your Honor. May it please the Court. My name is Peter Henderson. I'm here on behalf of Daniel McLeod. We're in a somewhat unique position. We're asking the Court to dismiss the case. I expect the Court has some questions, so please feel free to jump in. I did want to say, based on- I've heard that before. And based on sort of the pleadings in this case on appeal, I did want to clarify sort of the relationship that we have with the United States Attorney's Office and how we interpreted their review of the record in this case. Mr. Walters has always been, in our eyes, the model of a federal prosecutor, and we his right to appeal will punish him or that we'll somehow be vindictive towards him. But ultimately, we're in the business of risk management for our clients, and in assessing those risks, we discussed with Mr. McLeod, the remedy seems to be a full resentencing. But does that necessarily include unwinding the plea or the guidelines calculation? I don't think it does, but the 3553A factors have to be considered in every case. Okay. So that's the issue. It's not that the guidelines calculation would necessarily be at issue and could be recalculated on remand based on a full resentencing scope of remand order, but that the fact that there was a mistake could be taken into consideration in re-evaluating the equities. Right. And the government may have a different position on that. If the government sought to say, we need to revise the pre-sentence report on a remand, we would object to that, and we'd say, no, if there was a guidelines error, you need to cross-appeal it, and et cetera. But it puts the government in an awkward position because if the district court then says, well, do you have objections to the pre-sentence report, and what are the 3553A factors? I think the government has to ethically say, well, you know, we did make a mistake, and so to the extent that that goes into the calculus, the district court may want to consider that. And there is agreement that a mistake was made. Well, I don't, I think the government has a good point. I wouldn't concede that there was a guidelines mistake, and certainly it hasn't been briefed and it hasn't been appealed. So at this point, there is no legal mistake in the guidelines calculation. But again, it's a consideration on a remand that we'd have to consider and that the government would feel obligated to bring up. Certainly if this were remanded for full resentencing, we would represent Mr. McCloud to our fullest ability and object to sort of any improper inferences or trying to unwind what happened before. But again, it's about risk management. In the Thompson case, of course, two of the members of the panel are here, and I remember Judge Kaney saying, well, we've got to be careful what you wish for. And one of those cases, in fact, Mr. Blunt got remanded. He just got 15 more months in prison. And that was not based on vindictiveness, as far as I can see. I don't know the details of the case, but that's a risk, a real risk for our clients. If something does come up between the time of sentencing and resentencing, such as the government noticing something that maybe was wrong, it's a real risk. So we talked about those risks with Mr. McCloud. He agreed that he thought that the risk was more than he was comfortable with, and so he sought to dismiss the case. So we would ask the court to dismiss the case, to grant the motion to dismiss. Of course, this is something we will keep Mr. McCloud apprised on in terms of his ability to file a motion under 3583 to amend the conditions once he's released or at any time before then. But he's not willing . . . Is he entitled to counsel on those? No. If there's a modification that disadvantages him, he is, but not if it's seeking to modify it in his favor. Although, I can't imagine a district court following these cases, continuing to stick with the language that was found to be terribly broad and vague in Thompson and Kampus and all of these cases. So I would certainly hope that the district court would . . . it would be an easy modification. I know in our district, there is now some better language that avoids the breadth and being used on a standard basis. Well, the reason I ask that question is because if we would just vacate and let the district judge, as he has here, set the length of supervised release, but not set the conditions until closer to the release time, which would seem to me to make more sense, and if that does disadvantage the defendant, maybe that's the better course to follow. I think it is. I think the difficult thing is how to, under the current sort of statutory regime, how to enable the district court to come back when he's about to be released in 15 years. Well, yeah. More than likely, given the length of term, it would be a different judge. Right. Right. And I don't think we want to keep the case open for 14 years. But on the other hand, we do that now. I mean, a judge can die the next day after he sentences someone. Right. Right. Exactly. And that's . . . I talk to a lot of my clients about these sorts of remands, and that's one of the considerations I bring up. Because this is really a substitute for what used to be parole many years ago. Right. Except instead of getting time off the end of your sentence, you get it added on. So, right. It's an additional . . . It's the conditions that are strong. Right. Right. Unless the panel has further questions. Okay. Thank you, Mr. Anderson. Mr. Walters? Good morning. May it please the Court and counsel. Greg Walters on behalf of the United States. I just want to briefly, or as the Court has questions, address what I wrote in my response to the Court's May 6, 2015 order. My intentions were good, Your Honors, in seeking to reach out to a colleague to inform her of what I believe were risks. It was not to have a defendant operate under what are vague or unconstitutional conditions of supervisory release. It wasn't to threaten him or to seek him to not take an appeal to this Court. You had recommended a 188-month sentence, hadn't you? We did, Your Honor, which was . . . Yes. Now, the new guidelines range, based on the discovery of this additional provision, that would be 235, is that correct? I believe it would be 210 to . . . 210? I can give the Court the . . . And Judge Darrow had said that she wanted to give a guideline sentence. So that suggests . . . well, actually, if the bottom is . . . then I'm wrong. If the bottom is 210, so it would be . . . so there would be some likelihood of her increasing the sentence from 200 to 210. Correct, Your Honor. How likely is it that she'd go higher? And that's why I stated in my email that I think it's anyone's guess what she would do. But what I would like to point out is that, as you read through the Court's reasoning and how she used the guidelines, she truly used it as a psychological anchoring point, which I think this Court has used that term of, I'm going to start here, now I'm going to apply the 3553A factors to determine whether a sentence within the appropriate calculated guideline range should be imposed or not. And she, in fact, went 12 months above what the government had recommended in coming to that decision. So that really was the point behind my email. I do want to acknowledge that since the Court's May 6th order, I looked much more closely at the scope of remand cases, including United States v. Whitlow. I confess to this Court that an issue that could have been raised but is not by the government is not part of the scope of remand. With that said, a defendant who challenges his sentence, which in this case he is, in effect, he's challenging part of his sentencing package, as this Court has recognized, runs the risk of this Court even recognizing a calculation error that occurred in his favor and then facing a potential increased sentence on remand. And so, I just... Well, I think we've said that if there's a... that if we vacate conditions of sentence, conditions of supervised release, the district judge has to resentence. Because there is a relation between the conditions and the prison term. So the judge might feel, well, if I have to soften these conditions, I really have to increase the term of imprisonment. Isn't that the... isn't that his concern? I think that would be my understanding of what his concern would be. Of course, I haven't spoken beyond... spoken with counsel exactly what their concerns are beyond the potential guideline range issue. And then certainly, there may be conditions that the judge thinks are important, but maybe the record does not support and thinks... So doesn't that mean that there is an... that he faces a risk of a longer prison sentence? Yes, and I think this Court... There's no way for us to eliminate the risk, is there? Well, respectfully, there is. And the reason I say that, Your Honor, is before Thompson, this Court would regularly vacate conditions and send a case back on a limited remand just based on the conditions of supervised release. And I think Thompson was the first time, and I could be wrong, that this Court vacated an entire sentence. And then we've seen it do it in Capas, United States versus Capas. Then, I think, most recently, United States versus Downs, but there have been a sprinkling of maybe some other cases where it's just the sentence has been affirmed and it's been a limited remand. See, the problem is, I mean, take an extreme case. Suppose we said no conditions of supervised release in this case. Well, then the judge would certainly be entitled to lengthen the prison sentence since the conditions are, in part, a substitute. There are restrictions. I mean, part of it is, you know, aimed at rehabilitation, but some are just restrictions on the person's conduct to make him less dangerous. So if you take some of those restrictions away, you may feel he should. Of course, Judge Caney's suggestion is that, well, really, these conditions ought to be on the eve of release, because that's when you know more about the person, you know, 14 years from now. But I don't think we can say that, can we? I don't know. As an appellate attorney, I would tend to want to agree right now, given the number of times... You would what? As an appellate attorney, I would tend to want to agree, given the number of times we are currently before the Court on this issue, but procedurally, I see that as being difficult for a judge to... Well, my point is, and Judge Posner, we've had Judge Posner, of course, the leading cases on these, but this is a substitute for parole. I mean, that's all it is. It shoved it back when we got rid of parole. It's now been shoved back on the courts to make these decisions, and the judge, not the probation department. I think it... The conditions, that is, not the... Right. Procedurally, I think it requires a legislative fix that... Well, it may be. That's a problem. Or... Right. And the statute requires the judge to impose these conditions at sentencing. There isn't an option to defer it until later. And... And so, Congress is unlikely to respond to what the Seventh Circuit has done in this area by amending the statutory scheme. So, it is what it is. It is, Your Honor. And I wish there were a good fix to this. Beyond... I do think, as we look at our district courts, they are making strides, and there are still issues. There are still issues. Well, that's right. Because a lot of these cases are right in the middle of all the shakedown of... Right. And this is an example. This is June, 2014, and Judge Darrow, on the heels of Siegel, but before Thompson, and Kappas, Downs... Did the Central District of Illinois have a standing order of standard conditions of release? There is none, and there has been no standing order. Because some districts did have them. Northern District of Indiana had it, and then struck it once the cases came down. Correct, Your Honor. We did not have any such standing order, but there certainly was a standing practice of the imposition of all 13 standard conditions. I do note that last time I looked, a number of our judges are imposing between five to seven of those 13 conditions regularly, as opposed to all 13. So I think that it's clear that they have taken to heart what this court has said about those conditions. There's been a lot of work between the Public Defender's Office and ours, and the District Court, in trying to hone these down to comply with this court's precedent. Unless there are other questions, I would tender the rest of my time to the court. Thank you very much, Mr. Walters. Mr. Henderson? The court has no further questions. I have a question, yeah. Suppose we said, I'm not sure we would by any means, but suppose we said that we want to remand the case, we think the judge should reconsider some of the conditions. But we also think that, given that the government had recommended the 188 months, we think the 200-month sentence was adequate. And although there are problems with the conditions, there's no question that a judge can impose conditions of supervised release to protect the public against this kind of criminal behavior. We've never suggested there's any impropriety. The conditions we've tended to question have to do more with somewhat peculiar efforts at rehabilitation. You know, some of the conditions will say, well, the person has to find a job, has to get a GED, has to live with his family, what have you, which aren't directly related to protecting the public. So if we said something like that, would that reassure your client? Or would he still feel he doesn't want to take any risk of a possible longer sentence? We'd have to talk to him about it. And I'd be happy to file a further status report with the court as to whether... Yeah, I think that would be useful. The other thing that I was sort of considering is these conditions can be modified at any time. And perhaps in the next few weeks, we could sort of sit down with the U.S. Attorney's Office and perhaps probation and submit clarifying conditions to amend those conditions. And that would essentially moot this case and allow the court to dismiss it without the prejudice to Mr. McLeod in terms of the conditions being overbroad. So if the court would allow me to leave to file a status report in maybe two weeks, I'd be happy to update the court. Okay. Well, we'll discuss this when we have our post-argument conference. It may be issued in order, depending on outcome of our discussion, might either ask for supplemental as you just suggested with the U.S. Attorney or both. Okay. Okay, good. Okay. So thank you very much.